FILED
2017 Mar-31 PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:15-CV-1248-LSC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.     Introduction

The plaintiff, Christopher Wood, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Wood timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Wood was twenty-one years old at the time of the Administrative Law Judge's ("ALJ") decision, and he has an eighth grade education without prior work experience. (Tr. at 28.) Mr. Wood claims that he became disabled on September 21, 2011, due to being a slow learner, having foot problems, attention

deficit hyperactivity disorder ("ADHD"), inability to move his left foot, diabetes, and anxiety. (Tr. at 193.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Wood has not engaged in SGA since the application date, September 26, 2011. (Tr. at 25.) According to the ALJ, Plaintiff's diabetes mellitus, history of ADHD, impulse control disorder, borderline intellectual functioning, learning disability, and mood disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Mr. Wood's allegations to be totally credible, and she determined that he has the following RFC: he can perform light work except that he can only occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; has no limitation in reaching, handling, fingering, and feeling; should never

work in environments with concentrated exposure to extreme heat, extreme cold, humidity, or wetness; should avoid hazardous conditions such as unprotected heights and moving machinery; can understand, remember, and carry out simple, but not detailed or complex instructions; work place changes should be infrequent and introduced gradually; can perform work that needs little or no judgment and make simple, work-related decision; can never work at a production rate pace, but can perform goal-oriented work; can never interact with the general public, but can occasionally interact with co-workers and supervisors, meaning that he can be around them throughout the workday, but would have only occasional conversations and personal interaction, and overall would be better dealing with things rather than people; and is capable of sustaining concentration and attention for at least two hour blocks of time with normal breaks throughout an eight-hour day. (Tr. at 27.)

According to the ALJ, Mr. Wood has no past relevant work, he is a "younger individual," he has a "limited education," and he is able to communicate in English, as the regulations define those terms. (Tr. at 33.) She determined that transferability of skills is not an issue because Plaintiff has no past relevant work. (*Id.*) At the final step, the ALJ used Medical-Vocational Rule 202.17 as a guideline for finding that there are a significant number of jobs in the national economy that

Plaintiff is capable of performing, such as an entry level assembler, a sorter, and a cleaner/housekeeper. (Tr. at 33.) The ALJ concluded her findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, since September 26, 2011, the date the application was filed. (Tr. at 34.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Mr. Wood alleges that the ALJ's decision should be reversed and remanded for eight reasons. First, he takes issue with the ALJ's decision to give little weight to the opinion of a two-time examining medical source. Second, he contends that the ALJ erroneously relied on the opinion of the State agency non-examining psychological consultant. Third, he argues that the ALJ should have considered

additional impairments severe at step two. Fourth, he believes that the ALJ failed to consider his impairments in combination. Fifth, he contends that the ALJ failed to state adequate reasons for finding him not entirely credible. With regard to the credibility issue Plaintiff raises, he has also filed a motion asking this Court to remand this case so that the ALJ can conduct a new credibility determination pursuant to a new Social Security Ruling ("SSR") that was enacted in March 2016, SSR 16-3p. (Doc. 12). The Commissioner has responded in opposition to that motion. (Doc. 13). Sixth, the plaintiff takes issue with several aspects of the ALJ's RFC assessment. Seventh, he contends that the ALJ improperly drew adverse inferences from his noncompliance with medical treatment. Eighth, he argues that the ALJ improperly engaged in "sit and squirm" jurisprudence.

## A.    Weight Given to Two-Time Examining Medical Source

At Plaintiff's attorney's request, Dr. David R. Wilson, Ph.D., examined Plaintiff twice, first on May 24, 2011, for a consultative psychological evaluation ("CPE") and again over two years later, on July 9, 2013, for a follow up CPE.[1] He concluded at the first evaluation that

> [Plaintiff] is diabetic and he has a mood disorder, with mood swings and he does have a history of acting out. His behavior is likely to be too unstable and unpredictable for him to maintain a job. The combination of all of these problems makes it unlikely that he will be able to

---

[1]    Plaintiff had previously filed for SSI once before and was denied on September 19, 2011.

maintain employment. He would definitely have problems with the problem solving and the interpersonal aspects of such settings.

(Tr. at 529.) After the second evaluation two years later, Dr. Wilson concluded:

If anything, his mood disturbance appears to have gotten worse, and this may relate in part to him not being able to afford the appropriate medication he needs for his diabetes. He has had an increase in his moodiness and his irritability, and these would cause him major problems in any work environment. He would definitely have difficulty with the interpersonal and task aspects of any job. He is not capable of managing benefits.

(*Id.*) At both evaluations, Dr. Wilson completed a Mental Medical Source Statement, opining that Plaintiff had marked limitations due to the mood disorder (not the ADHD), including in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, as well as marked limitations in his ability to maintain concentration and adaption. (Tr. at 530-31.) Dr. Wilson diagnosed Plaintiff with bipolar disorder, history of ADHD, and borderline intelligence. (*Id.*) He assessed Plaintiff's Global Assessment of Function ("GAF") score to be 48, which is a serious impairment of functioning. (*Id.*) The ALJ ultimately gave little weight to Dr. Wilson's opinion because it was not consistent with his own notes or the medical record as a whole, including the other medical opinions of record.

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the

9

examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).   A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating doctor's opinion. *See* 20 C.F.R. § 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). However, the opinions of one-time examiners, i.e., non-treating doctors, are not entitled to deference or special consideration. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Dr. Wilson did not have an ongoing treating relationship with Plaintiff and was, therefore, an examining physician, not a treating doctor. *See* 20 C.F.R. §§ 416.902, 416.927(c)(1), (c)(2). Thus, his opinions were not entitled to any special deference. *See id.* Moreover, an ALJ may discount any doctor's opinion when the opinion is conclusory, the doctor fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 416.927(c). A doctor's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence; however, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20

C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c);
Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *1.

Substantial evidence supports the ALJ's decision to give little weight to Dr.
Wilson's opinion that Plaintiff could not work. As discussed by the ALJ, although
Dr. Wilson found Plaintiff to have marked limitations in various aspects of his
mental capabilities, his treatment notes don't support this conclusion. For
example, Dr. Wilson noted upon examination that Plaintiff was alert and oriented,
presented with neat hygiene and appearance, his thought processes were intact, his
speech was clear and normal in rate, he was cooperative and respectful throughout
the evaluation, and he denied phobias, obsessions, or compulsions. (Tr. at 527-28.)
Yet Dr. Wilson opined that he had marked limitations in areas such as social
interaction and neatness. Additionally, Plaintiff reported to Dr. Wilson in July 2013
that he goes out with his friends and plays video games and watches television all
day, which to the ALJ indicated that Plaintiff could maintain some level of
concentration, contrary to Dr. Wilson's opinion that he had marked limitations in
that area. (*Id.*) At the July 2013 evaluation, Plaintiff stated that he did not have a
girlfriend or attend church; however, two years prior he reported having a
girlfriend, going to church, and going to the movies with friends. (*Id.*) The ALJ also
noted that while Plaintiff complained of hallucinations and panic attacks to Dr.

Wilson (tr. at 528), he has never reported such symptoms to any other doctor or counselor.

The ALJ further noted that the other medical source opinions in the record were not consistent with Dr. Wilson's. For example, in contrast to Dr. Wilson, Dr. Bentley, who administered a WAIS-III to Plaintiff in March 2010 and later performed a psychological consultative examination of Plaintiff on February 2, 2012, observed that while Plaintiff's mood was mildly dysphoric and his affect was restricted, there was no obvious evidence of anxiety or restlessness, and there were no indications of phobias, obsessions, or unusual behaviors. (Tr. at 391.) Dr. Bentley noted that Plaintiff was not in any type of mental health treatment or taking any medication for mental health issues. (Tr. at 390.) He noted Plaintiff's dress, grooming, and personal hygiene were all satisfactory with no deterioration in his daily living skills or impairment in his psychomotor skills; he made good eye to eye contact, and he was alert and oriented. (Tr. at 391.) He estimated his cognitive functioning to be in the upper end of the mild range of mental retardation to the borderline range. (Tr. at 392.) Dr. Bentley did not note any problems with concentration on the part of Plaintiff when he administered the WAIS-III to him. (Tr. at 391.)

Plaintiff argues specifically that the ALJ "substituted her opinion" for Dr. Wilson's opinion. However, assessing a claimant's RFC is an issue reserved especially for the Commissioner, and at the hearing level, this duty is the ALJ's. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); SSR 96-5p. It does not appear to the Court that the ALJ in any way substituted her opinion for that of Dr. Wilson's, but rather, she assessed Plaintiff's RFC by appropriately considering all medical evidence of record, including Dr. Wilson's opinion. It was appropriate for the ALJ to conclude that while Plaintiff had some mental limitations, he does not have the marked limitations as opined by Dr. Wilson.

## B. Weight Given to the Opinion of the State Agency Non-Examining Psychological Consultant

The ALJ gave great weight to the state agency psychological consultant Amy Cooper, Ph.D.'s opinions in support of her credibility determination and RFC assessment. (Tr. at 31, 97-109). State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 416.927(e)(2)(i); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Dr. Cooper concluded Plaintiff had some work limitations due to mental impairments (tr. at 107-109), which the ALJ accounted for in her RFC assessment. (Tr. at 27). Although Dr. Cooper did not examine Plaintiff, the ALJ reviewed all the evidence

and found that Dr. Cooper's opinion was supported by and consistent with the record. (Tr. at 31). *See* 20 C.F.R. §416.927(c)(3), (c)(4); SSR 96-6p.

Plaintiff's sole argument with respect to this issue is to rely upon Eleventh Circuit case law stating, "The opinions of non-examining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Plaintiff argues that because there are no published opinions overruling the *Lamb* precedent, it remains the law.

However, Social Security regulations promulgated in 1991 establish that an ALJ may give more weight to a non-examining doctor's opinion than to a treating or examining doctor's opinion as long as the record supports the weight the ALJ gives the respective opinions. *See* 20 C.F.R. § 419.927(c), (e). When prior case law conflicts with regulations, courts should defer to the regulations. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005); *Satellite Broad. & Comm'ns v. Oman*, 17 F.3d 344, 348 n.8 (11th Cir. 1994) ("new regulations at variance with prior judicial precedent are upheld unless they exceeded the [Commissioner's] authority or are arbitrary and capricious") (quoting *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)).

Additionally, since the change in the regulations, the Eleventh Circuit has recognized that ALJs *must* weigh the opinions of State agency consultants: "[u]nder 20 C.F.R. [§ 416.927(e)(2)], the ALJ must consider non-examining state agency psychologists' opinions and, when the ALJ does not give controlling weight to a treating physician, must explain the weight given to their opinions." *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 876 (11th Cir. 2006). In *Good v. Astrue*, the Eleventh Circuit found that the ALJ's rejection of a treating physician's opinion was supported by substantial evidence where the opinion was unsupported by his treatment notes, the plaintiff's own testimony, and other evidence, including the findings of the State agency non-examining consultants, which the ALJ was "required" to consider. 240 F. App'x 399, 403 (11th Cir. 2007); *see also Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971, at *2 (11th Cir. 2007) (ALJ was entitled to reject the opinion of an examining psychologist because his opinion was contrary to the opinions and assessments of the state agency non-examining psychologists). Accordingly, Plaintiff has not established that the ALJ erred in giving greater weight to Dr. Cooper's opinion than to Dr. Wilson's.

## C.    Consideration of Additional Impairments as Severe

The plaintiff argues that the ALJ did not properly consider all of his severe impairments at step two. Plaintiff claims certain additional severe impairments

such as bipolar disorder, severe depression with extreme mood swings, generalized anxiety disorder, and suicidal ideation.

However, the ALJ found Plaintiff had multiple severe impairments, and by finding at least one severe impairment, the ALJ found in Plaintiff's favor and proceeded with the other steps of the sequential evaluation process. (Tr. at 17-34). *See* 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii)-(v). As the Eleventh Circuit has stated:

> the ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied. Indeed, since the ALJ proceeded beyond step two, any error in failing to find that [claimant] suffers from [] additional severe impairments . . . would be rendered harmless.

*Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014) (same); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 857 (11th Cir. 2013) (same).

Moreover, Plaintiff failed to prove that he has additional severe impairments. Plaintiff specifically argues that the ALJ failed to apply the Eleventh Circuit's "slight abnormality" standard at step two. *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (defining a "severe impairment" within the meaning of § 416.920(c) by contrasting it to non-severe impairments, stating that a claimant's

"impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience"). However, at step two of the process in determining whether one is disabled, the plaintiff has the burden of proving that his impairment is severe. *See* 20 C.F.R. § 404.1512(a); *Doughty*, 245 F.3d at 1278. The burden also requires proving that the impairment has been severe for at least twelve consecutive months. *See* 20 C.F.R. §§ 416.905(a), 416.909, 416.920(a)(4)(ii); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Plaintiff cites no record evidence in support of his argument or to indicate that the additional impairments he claims should have been considered severe affected his ability to work. Although Plaintiff's records show diagnoses or history of bipolar disorder, depression with mood swings, generalized anxiety disorder, and suicidal ideation, diagnoses alone do not establish work-related limitations. As the Eleventh Circuit has noted, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). The ALJ did not err at step two.

### D.    Consideration of Impairments in Combination

The plaintiff claims that the ALJ did not consider all of his impairments in combination in assessing his RFC. An ALJ must consider the combined effects of all impairments in evaluating disability. *See Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (finding that "it is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled"). SSR 96-8p also requires considering the impact of both severe and non-severe impairments on the ability to work:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5.

The ALJ complied with the regulation here, discussing Plaintiff's subjective complaints and the medical evidence regarding his conditions (tr. at 26-32), finding that while Plaintiff had severe impairments, as explained above, he did not have "an impairment or a combination of impairments" that met or equaled a listed

impairment (tr. at 25), and stating that she had considered any functional limitations imposed by his impairments, "either alone or in combination", when she assessed Plaintiff's RFC and credibility. (Tr. at 23, 25, 28). Such statements have been found by the Eleventh Circuit to provide sufficient evidence that an ALJ considered the combined effect of a plaintiff's impairments. *See Tuggerson-Brown*, 572 F. App'x at 951-52 (citing *Wilson v. Barnhart*, 284 F.3d 1219, at 1224–25 (11th Cir. 2002) and *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)). The ALJ went beyond just making those statements, however, specifically discussing evidence of Plaintiff's bipolar disorder, impulsive control disorder, borderline intellectual functioning due to mental retardation, illiteracy, severe attention deficit hyperactivity disorder, severe depression with extreme mood swings, generalized anxiety disorder, suicidal ideation, insulin-dependent diabetes with peripheral neuropathy, lower back pain, hypertension, and insomnia. (Tr. at 27-33.) Accordingly, the record sufficiently demonstrates that the ALJ properly considered all of Plaintiff's impairments, even those not specifically found to be severe, in reaching a conclusion that he was not disabled.

### E.   Credibility Determination and Motion to Remand Pursuant to SSR 16-3p

The Commissioner published SSR 16-3p on March 24, 2016, and explicitly established the effective date for the ruling as March 28, 2016. *See* SSR 16-3p, 2016

WL 1237954, at *1 (March 24, 2016). SSR 16-3p was intended to supersede former

SSR 96-7p, and was enacted for the purpose of providing "guidance about how we

evaluate statements regarding the intensity, persistence, and limiting effects of

symptoms in disability claims under Titles II and XVI of the Social Security Act."

SSR 16-3p, 2016 WL 1119029 (March 16, 2013), at *1. Specifically, SSR 16-3p

> eliminat[ed] the use of the term "credibility" from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.
>
> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .
>
> . . .
>
> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related

activities or, for a child with a title XVI disability claim, limit the child's ability to function independently, appropriately, and effectively in an age-appropriate manner.

*Id.* at *1-2, 10 (alterations and ellipses supplied).

Plaintiff asserts in his motion to remand that even though SSR 16-3p was not adopted until after his claim was decided, it should be applied retroactively.[2] However, according to the Supreme Court, "[r]etroactivity is not favored in the law," and administrative rules will not be construed to have retroactive effect unless Congress expressly empowers the agency to promulgate retroactive rules and the language of the rule explicitly requires retroactive application. *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988). The retroactivity of SSR 16-3p has not been directly addressed by any circuit court of appeals. Plaintiff cites *Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016), a Seventh Circuit case which neither endorsed nor otherwise discussed retroactive application of SSR 16-3p. He also cites *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 WL 4250214 (C.D. Ill. Aug. 10, 2016), a non-binding out-of-circuit district court case which cited to a Seventh

---

[2]   Plaintiff asserts generally that his motion was filed "pursuant to sentence 4" of 42 U.S.C. § 405(g). In *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991), the Supreme Court made clear that there are only two types of remand orders permitted by 42 U.S.C. § 405(g): those under sentence four and those under sentence six. Sentence four authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). Plaintiff argues that the case should be remanded to the Commissioner for the ALJ to assess the intensity and persistence of Plaintiff's symptoms pursuant to the new SSR 16-3p.

Circuit case to find an exception to the rule in *Bowen*, 488 U.S. at 208, where the new rule clarifies rather than changes existing law. *See Mendenhall*, 2016 WL 4250214, at *3 (citing *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). However, contrary to the reading of *Pope* urged in *Mendenhall*, the *Pope* court did not remand for reconsideration under a new regulation, and it explicitly held that applying a regulation that is a mere clarification of an existing regulation "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." *Pope*, 998 F.2d at 483. That is, rather than remand the case for reconsideration under the new regulation, the *Pope* court considered the clarification and affirmed the ALJ's decision. *See id.* at 486-87.

The district courts within the Eleventh Circuit that have considered whether SSR 16-3p applies retroactively have differed in their approaches. *See Lane v. Berryhill*, 2017 WL 976923, at * n.8 (S.D. Ga. Feb. 16, 2017) (finding that SSR 16-3p does not apply retroactively because it changes, rather than merely clarifies, the existing regulation and the Commissioner did not expressly state that it applies retroactively); *Ring v. Berryhill*, 2017 WL 992174, at *13 (N.D. Ala. March 15, 2017) (finding that SSR 16-3p does apply retroactively but ruling that it did not warrant remand in that case because the ruling prohibits ALJs from basing their

credibility determinations on a claimant's general or overall character for truthfulness and the ALJ in that case made his credibility determination based solely on the claimant's subjective complaints related to his alleged impairments); *Hargress v. Berryhill*, 2017 WL 588608 (N.D. Ala. Feb. 14, 2017) (declining to address issue of retroactive application because even if SSR 16-3p applies retroactively, the ALJ did not violate it in that case).

Given the Supreme Court's holding in *Bowen* and the absence of any binding precedent directing that SSR 16-3p is to apply retroactively, the Court is not persuaded that SSR 16-3p applies retroactively to the ALJ's January 14, 2014, decision in this case.

Even if SSR 16-3p did apply retroactively, the ALJ did not violate it in this case. As an initial matter, SSR 16-3p does not alter the methodology for evaluating a claimant's symptoms, but rather explains that the Commissioner eliminated the use of the term "credibility" from this consideration, as "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Even though the ALJ stated that she would assess the "credibility of [Plaintiff's] statements based on a consideration of the entire case record" (tr. at 28), she did not assess Plaintiff's general, or "overall" character for truthfulness. Instead, she determined, in accordance with SSR 16-3p, whether

Plaintiff's subjective complaints were supported by the medical evidence and consistent with other information in the record, as explained further below. *See Cole*, 831 F.3d at 412 ("The change in wording [from SSR 96-7p to SSR 16-3p] is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.").

Nor did the ALJ's consideration of Plaintiff's subjective symptoms violate existing regulations, which have not changed. *See* 20 C.F.R. §§ 404.1529, 416.929. When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); *Wilson*, 284 F.3d at 1225-26. If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 416.929(c), (d); *Wilson*, 284 F.3d at 1225-26. An

ALJ is not required to accept a claimant's allegations of pain and/or symptoms. *Wilson*, 284 F.3d at 1225–26. However, the ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). Further, when the reasoning for discrediting is explicit and supported with substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, the ALJ's decision reveals that she properly assessed Plaintiff's subjective complaints of pain. Based on the overall evidence as explained by the ALJ (*see* tr. at 25-32), the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. at 28). The only reason Plaintiff articulates in his initial and reply briefs for why the ALJ's credibility determination was allegedly flawed is because the ALJ purportedly placed too much emphasis on Plaintiff's stated ability to perform various daily activities, such as socializing, playing video games, hanging out with friends, going to the movies and church, cleaning his room, visiting family, being independent in his personal care such as

bathing, dressing, and feeding himself, preparing meals, sweeping, doing laundry, mopping, dusting, washing dishes, cleaning his room, and shopping. (*See* Tr. at 32.) The ALJ also noted that Plaintiff and his mother gave conflicting reports regarding his abilities, such as preparing a function report that stated that he was unable to cook and do some of the chores that they had both previously reported he was able to do. (*See id.*) While participation in everyday activities does not necessarily preclude a finding of disability, the ALJ still may consider such activities as evidence undermining a claimant's allegations of disabling limitations. 20 C.F.R. § 416.929(c)(3)(i); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not [] prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) ("the ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily activities, in making the finding about pain."). Here, the ALJ did not rely solely on Plaintiff's daily activities in discounting his subjective complaints, nor did she find Plaintiff's activities to be dispositive evidence of his ability to work. (Tr. at 29). Rather, the ALJ properly considered Plaintiff's activities together with the other evidence in accordance with the regulations, rulings, and Eleventh Circuit case law when assessing his subjective complaints. Notably, Plaintiff does not cite to any evidence to

26

corroborate his subjective complaints despite his burden to prove that he is disabled. Pursuant to relevant case law and regulations, the ALJ articulated sufficient reasons for finding Plaintiff not credible considering Plaintiff's noncompliance in treatment and medication. Plaintiff's argument in his brief that the ALJ erred in making her credibility determination fails, and his motion to remand is due to be denied.

**F.    RFC Determination**

Plaintiff claims that the ALJ's finding that he has the RFC to perform light work with additional limitations is not supported by substantial evidence for several discrete sub-reasons. First, Plaintiff asserts the ALJ did not include a Psychiatric Review Technique Form with her opinion. Plaintiff's argument is without merit. The requirements for the Psychiatric Review Technique ("PRT") form are explained in 20 C.F.R. § 416.920a, which identifies four broad functional areas in which the Commissioner should rate the degree of functional limitation: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *See* 20 C.F.R. § 416.920a(c)(3). The regulation goes on to state that "[a]t the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), we will document application of the technique in the decision," *see* 20 C.F.R. §

27

416.920a(e), which the ALJ did here. Indeed, the ALJ specifically identified the PRT requirements in her decision and discussed the relevant evidence in relation to each of the four PRT categories. (Tr. at 25-26). She found that Plaintiff had moderate difficulties in daily activities, social functioning, and concentration, persistence, or pace and no episodes of decompensation, each of extended duration. (Tr. at 25-26). The ALJ, in her decision, properly explained her application of the PRT and that is all that the regulations require.

Second, Plaintiff asserts that the ALJ's RFC finding is flawed because it was not based upon a medical assessment from a physician. This is not true. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ.") (citing 20 C.F.R §§ 404.1513, 404.1527, 404.1545). Requiring an ALJ's RFC finding to be based on a physician's opinion would confer upon the physician the authority to determine whether the claimant was under a disability and "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183, at *2; *Shaw v. Astrue*, 392

F. App'x 684, 687 (11th Cir. 2010) ("opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner").

Additionally, a physician's opinion regarding what a claimant can still do is different from an ALJ's assessment of a claimant's RFC. *See* 20 C.F.R. §§ 416.913(b), (c), 416.945, 416.946(c). SSR 96-5p clarifies that even though an ALJ's RFC assessment may adopt a medical source statement or PCE, they are not the same thing:

> A medical source statement is evidence that is submitted to [the Commissioner] by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p, 1996 WL 374183, at *4. Since an RFC assessment is not a medical assessment, the ALJ did not need a doctor's opinion regarding Plaintiff's functional limitations before assessing his RFC.

Third, Plaintiff argues that the ALJ failed to include a function-by-function assessment of his ability to do work-related activities in her RFC assessment. SSR 96-8p states that, at step five of the sequential evaluation, RFC must be expressed in terms of the exertional categories, such as "light" or "heavy." *See* SSR 96-8p, 1996 WL 374184, at *3, *5. In this case, the ALJ discussed the medical evidence in

accordance with SSR 96-8p and found that Plaintiff could perform the exertional demands of a range of light work. (Tr. at 27.) The definition of the exertional levels found in the rulings and regulations encompasses the required work-related activities. 20 C.F.R. § 416.967(c); SSR 83-10, 1983 WL 31251, at *5. Thus, the regulations' and rulings' definitions of the exertional levels and the ALJ's RFC finding sufficiently constitutes the "function by function" assessment contemplated by SSR 96-8p. In light of the foregoing, the ALJ did not need to further discuss Plaintiff's ability to perform each of the exertional demands. *See Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007) (noting that, although an ALJ could have been more specific and explicit in his findings, the ALJ considered all the evidence and complied with SSR 96-8p in finding the claimant could perform light work).

For all of the above reasons, Plaintiff's argument that substantial evidence does not support the ALJ's RFC assessment is without merit.

### G.    Inferences Drawn from Noncompliance with Medical Treatment

Next, Plaintiff argues that the ALJ should not have drawn an adverse inference from his noncompliance with medical treatment because he could not afford treatment. In this regard, the ALJ stated:

> The claimant has been continually non-compliant with his treatment for diabetes. His blood sugar continuously fluctuates because he does

not take his insulin as prescribed, and he does not follow a proper diabetic diet. Even though the medical record is full of documentation of blood sugar fluctuations, including two emergency room visits for blood sugar fluctuations, it is due to the claimant's own intentional noncompliance. When he takes his insulin, he reported it works (Exhibit l 5F, page 2). At the hearing, he stated he is unable to afford his medication; however, he continues to smoke cigarettes daily, which is money that could be spent to purchase his insulin. Notably, even when the claimant was receiving benefits and on Medicaid, he still did not take his medication. In addition, at the claimant's most recent emergency room visit for elevated blood sugar in June 2012, he told conflicting stories. He reported to the emergency room nurse that he was taking his insulin shot and had to adjust the dosage because his blood sugar was fluctuating high; however, he later reported to the emergency room doctor that he had ran out of his insulin and had not taken it (Exhibits 3F, 6F, 14F, and l7F-18F).

(Tr. at 31-32).

The general rule is that noncompliance with a proscribed treatment regimen does not prevent a claimant from receiving benefits where noncompliance is the result of an inability to afford treatment. *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1998). Additionally, the regulations provide that an ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. *See* SSR 96-7p, 1996 WL 374186, at *7, *superseded by* SSR 16-3p.

However, as noted by the ALJ, Plaintiff's claim that he could not afford treatment is undermined by his documented ability to obtain treatment for his diabetes in June and October 2012 (tr. at 519-24), emergency room treatment in May, June, August, and October 2012 (tr. at 536-46, 555-59), treatment for a laceration in November 2012 (tr. at 547-549), and treatment for an ankle injury in May 2013 (tr. at 550-54). Moreover, Plaintiff acknowledged at the hearing that his mother purchases his insulin, stating: "Dr. Cole[sic] give me samples. My mom will call it in." (Tr. at 70).

Nor was it inappropriate for the ALJ to have considered Plaintiff's smoking habits in determining that his attempt to explain his sparse treatment record due to lack of resources was not credible. *See Sias v. Secretary of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (discounting a claim of disability due to thrombosis because the claimant failed to wear support hose, alleging they were too costly, even though he smoked two packs of cigarettes a day, because "[t]aking judicial notice of the monetary costs of this dangerous habit, we calculate that the cost of the hose could have been covered by the savings the claimant would realize if he gave up cigarettes"). The Court sees no reversible error in the ALJ's drawing inferences from Plaintiff's lack of medical treatment.

## H.    "Sit and Squirm" Jurisprudence

"Sit and squirm" jurisprudence is a phrase used to denote an ALJ's denial of a claim based on the claimant's failure to exhibit certain traits the ALJ has subjectively determined would exist if the claimant were truly disabled. *See Freeman v. Schweiker*, 681 F.2d 727, at 731 (11th Cir. 1982). While "sit and squirm" jurisprudence is a forbidden basis to determine a claimant's disability, an ALJ is not prohibited from *considering* a claimant's appearance and demeanor at a hearing. *See Macia v. Bowen*, 829 F.2d 1009, at 1012 (11th Cir. 1987); *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985). The regulations and SSR 96-7p allow an ALJ to consider his or her observations of the claimant in assessing the credibility of the claimant's allegations. *See* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4); SSR 96-7p, 1996 WL 374186, at *5, *superseded by* SSR 16-3p.

Plaintiff's claim that the ALJ engaged in "sit and squirm" jurisprudence is without merit, referring to one sentence in the ALJ's opinion: "At the hearing, [Plaintiff] states [his flat footedness] causes problems with prolonged standing and sitting; however, he was able to sit during the entire hearing, which lasted just shy of an hour." (Tr. at 31-32.) If anything, the statement constitutes a minor consideration of Plaintiff's demeanor in regard to the ALJ's credibility determination, which the regulations permit.

## VI.    Conclusion

Upon review of the administrative record, and considering all of Mr. Wood's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Additionally, Plaintiff's motion to remand is due to be denied. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 31, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704